221 F.Supp. 848 (1963)
AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, American Motorists Insurance Company, Federal Mutual Insurance Company and Lumbermens Mutual Casualty Company, Plaintiffs,
v.
AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Defendant.
United States District Court S. D. New York.
August 14, 1963.
*849 Lord, Day & Lord, New York City, for plaintiffs.
Hawkins, Delafield & Wood, New York City, for defendant.
COOPER, District Judge.
This is a motion by defendant pursuant to F.R.Civ.P. 12(b) (6) to dismiss the complaint for failure to state a claim upon which relief can be granted, or in the alternative that certain paragraphs of the complaint and certain sections of the prayer for relief be stricken pursuant to Rule 12(f).
As to Rule 12(b) (6): For purposes of such a motion, all the material allegations in the complaint are deemed true. Further, in determining the merits of the motion, it must be borne in mind that, "* * * a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." 2 Moore's Federal Practice, 2d Ed. (1962), p. 2245.
The underlying action is for damages and injunctive relief resulting from an alleged violation of Sec. 1 of the Sherman Act. 15 U.S.C.A. § 1. Upon oral argument, plaintiffs, often referred to as the Kemper Insurance Companies (hereinafter Kemper) abandoned all reliance on violations of the Clayton Act, 15 U.S.C.A. § 15, for purposes of this motion.
Plaintiffs contend that certain contracts entered into by defendant television network (hereinafter ABC) were tying agreements; that these agreements were a per se violation of the Sherman Act; and that Kemper sustained damages as a result.
Sec. 1 of the Sherman Act reads:
"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal * * *."
The detailed complaint outlines the structure of the television industry insofar as it relates to the agreements made by ABC with its affiliated stations and potential sponsors. Kemper alleges that it approached ABC seeking sponsorship of an ABC news program called "Evening Report." The sponsorship sought by Kemper was for 95 affiliated stations of ABC. However, ABC essentially refused to allow such sponsorship unless Kemper agreed to sponsor "Evening Report" on an additional 35 stations.
Kemper's business purposes required only the 95 stations, and it further contends that the 35 additional stations were completely useless to it, for they were in an undesirable market area. For purposes of this motion, as stated above, these allegations are deemed admitted.
Kemper contends that the two separate tying agreements resulted in: (1) the tie-in of 35 undesired stations to 95 desired stations and (2) the tie-in of sponsorship on 35 undesired stations to the basic sponsorship of the unique program "Evening Report."
Defendant relies heavily on Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 *850 (1953), to show that there is only one product involved here, namely, sponsorship of television programs, and thus there can be no tying agreement. This court cannot agree that there is only one product involved in the instant action.
Thirty-five undesirable stations are not the same as 95 desirable stations. Nor are 35 additional stations the same product as the sponsorship of a unique program. Furthermore, the Times-Picayune case has been limited to the exact set of facts before the court and readily distinguishable from the instant case. Cf. Northern Pacific R. Co. v. United States, 356 U.S. 1, 10, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958).
Indeed, the rationale of Times-Picayune (345 U.S. at p. 605, 73 S.Ct. at p. 878, 97 L.Ed. 1277), adopted in later cases, does not support defendant's contentions.
"Tying arrangements, we may readily agree, flout the Sherman Act's policy that competition rule the marts of trade. * * * By conditioning his sale of one commodity on the purchase of another, a seller coerces the abdication of buyers' independent judgment as to the `tied' product's merits and insulates it from the competitive stresses of the open market. But any intrinsic superiority of the `tied' product would convince freely choosing buyers to select it over others, anyway."
This is precisely the situation Kemper maintains confronts it. Kemper was unable to exercise its best judgment as to the desirability of sponsoring "Evening Report" on an additional 35 stations, for by refusing, it could not sponsor the program initially. This, coupled with the economic leverage ABC was able to wield over its affiliated stations and the program, constituted, Kemper maintains, a per se violation of Sec. 1 of the Sherman Act.
Defendant again relies on Times-Picayune for the proposition that there must be a monopoly power or dominance over the tying product in order to constitute a per se violation. However correct this interpretation of Times-Picayune may be, its effect was vitiated in Northern Pacific where the Supreme Court said 356 U.S. at p. 11, 78 S.Ct. at p. 521, 2 L.Ed.2d 545:
"While there is some language in the Times-Picayune opinion which speaks of `monopoly power' or `dominance' over the tying product as a necessary precondition for application of the rule of per se unreasonableness to tying arrangements, we do not construe this general language as requiring anything more than sufficient economic power to impose an appreciable restraint on free competition in the tied product."
This rationale was given added emphasis in United States v. Loew's Incorporated, 371 U.S. 38, at 45, 83 S.Ct. 97 at 102, 9 L.Ed.2d 11 (1962) where the court reaffirmed the position enunciated in Northern Pacific and immediately added:
"Market dominance  some power to control price and to exclude competition  is by no means the only test of whether the seller has the requisite economic power. Even absent a showing of market dominance, the crucial economic power may be inferred from the tying product's desirability to consumers or from uniqueness in its attributes."
It is patent that the desirable program "Evening Report" is of a unique nature sufficient to give ABC a leverage to gain economic power over the tying product.
In addition, Kemper complains that by virtue of ABC's contracts with their affiliated stations, the affiliates are required to accept as sponsors for network programs those supplied by the network. This, too, contends Kemper, provides ABC with sufficient economic power to constitute a per se violation of the Sherman Act.
It cannot be said, therefore, that plaintiff is not entitled to any relief if the facts as alleged can be proved and demonstrated to a certainty.
*851 Even if plaintiffs were not required to take the additional 35 stations, but would be forced, if they chose not to, to pay a disproportionately high rate for the 95 stations, this too would constitute a violation. See, United States v. Loew's Inc., supra, 371 U.S. 54, 83 S.Ct. 106-107, 9 L.Ed.2d 11.
Defendant points to Productive Inventions Inc. v. Trico Products Corporation, 224 F.2d 678 (2d Cir., 1955), cert. denied 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956), and Conference of Studio Unions v. Loew's Inc., 193 F.2d 51 (9th Cir., 1951), cert. denied 342 U.S. 919, 72 S.Ct. 342, 96 L.Ed. 687 (1952), in support of its contention that Kemper is not the proper party to bring this action. These cases are inapposite, for the plaintiffs in those cases were only indirectly harmed by the alleged restraints of trade.
It is true that the articles and reports quoted by plaintiffs in their memorandum are not determinative of the issue. However, their import is to manifest a directional change in the law which would seek to cover just such situations as the claims in the instant action. With the law in flux, this is all the more reason for denying a motion to dismiss for failure to state a claim upon which relief can be granted. Cf. Arfons v. E. I. Du Pont De Nemours & Company, 261 F.2d 434 (2d Cir., 1954).
Accordingly, the motion to dismiss under Rule 12(b) (6) is denied.
Defendant moves, in the alternative, to strike certain of the paragraphs of the complaint and the prayer for relief. Some of these relate to the agreements between ABC and its affiliated stations; the others relate to a state court action instituted by ABC against Kemper and the requested injunction against this action.
Motions under Rule 12(f) are not favored. It is said in 2 Moore's Federal Practice, 2d Ed. (1962) at p. 2317:
"Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied."
Even if the contracts between ABC and its affiliates do not constitute a tying agreement giving Kemper a cause of action, the allegations certainly have some bearing on the issues, even if only to demonstrate the economic power and leverage that ABC was able to exercise to control the tie-in.
The thrust of Rule 12(f), as discussed above, applies equally to the motion by ABC to strike those paragraphs relating to the state court action and the injunctive relief sought thereunder.
Defendant directs this court to Avon Publishing Co. v. American News Company, 143 F.Supp. 516 (S.D.N.Y.1956), in addition to 28 U.S.C. § 2283, as grounds for striking these matters. In Avon, an application for a preliminary injunction was denied, for there was no judgment of a federal court which required the protection afforded by the issuance of an injunction against a state court action. In the instant case, Kemper seeks an injunction only if and when the contract is found to be violative of the Sherman Act, and if such an injunction would be necessary to effectuate the judgment of this court. As the court in Avon said 143 F.Supp. at 519:
"In the case at bar the contract, which is the subject of the action in the New York Supreme Court, has not been adjudicated as illegal under the Antitrust Acts and, therefore, there is no judgment in this Court which must be preserved by the issuance of an injunction."
The granting or denying of an injunction is properly within the ambit of the trial court upon a determination of the issues in this case; the paragraphs relating to the state action and injunctive relief should not be stricken at this juncture.
*852 Accordingly, defendant's motion is denied in its entirety.
This is to be considered an order; no settlement thereof is necessary.
So ordered.